**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF OHIO
EASTERN DIVISION**

| | | |
|---|---|---|
| **JAMES M. BURNS, SR.,** | ) | **CASE NO.:  1:11 CV 448** |
| | ) | |
| Plaintiff, | ) | **JUDGE DONALD C. NUGENT** |
| | ) | |
| v. | ) | |
| | ) | |
| **CHRYSLER GROUP LLC,** | ) | **MEMORANDUM OPINION** |
| | ) | **AND ORDER** |
| Defendant, | ) | |
| | ) | |
| and | ) | |
| | ) | |
| **AMANDA BENT BOLT CO.,** | ) | |
| | ) | |
| Defendant/Intervenor. | ) | |

This matter comes before the Court subsequent to a Claim Construction hearing. The parties have filed Opening Briefs on claim construction (Docket #s 19 and 20); Reply Briefs (Docket #s 22 and 23); and, a Joint Claim Construction and Prehearing Statement (Docket #24). A hearing was held on March 25, 2012. In addition, the Parties submitted Post-Hearing Briefs (Docket #s 29 and 30). Accordingly, the claim construction issues in the instant matter are now ripe for determination.

**I. BACKGROUND**

On March 4, 2011, Plaintiff, James M. Burns, Sr., filed this lawsuit against Defendant, Chrysler Group LLC, alleging infringement of U.S. Patent No. 7,886,628 ("the 628 Patent"). The products alleged to infringe the 628 Patent are shift lever assemblies which are installed in

Chrysler vehicles. Shift lever assemblies are parts used in automobiles and trucks with manual transmissions, for connecting a gear shift lever to the transmission. The products alleged to infringe the 628 Patent are manufactured for Chrysler by Defendant/Intervenor, the Amanda Bent Bold Company. Amanda Bent Bolt Company intervened as a co-defendant in this case pursuant to an agreement between Chrysler and Amanda Bent Bolt.

## II. STANDARD OF REVIEW

An infringement analysis entails two steps. The first step is determining the meaning and scope of the patent claims asserted to be infringed. The second step is comparing the properly construed claims to the product accused of infringing. *See Markman v. Westview Instruments, Inc.*, 52 F.3d 967, 976 (Fed. Cir. 1995) (*en banc*), *aff'd*, 517 U.S. 370 (1996). It is the first step, commonly known as claim construction or interpretation, that is at issue at this juncture. Construction of patent claims is a question of law for the court. *See id*. at 970-71.

In construing claims, the court should consider first intrinsic evidence of the record: the patent itself, including the claims, the specification, and, if in evidence, the prosecution history. *See Vitronics Corp. v. Conceptronic, Inc*., 90 F.3d 1576, 1582 (Fed. Cir. 1996). This is the most significant source of the legally operative meaning of disputed claim language. *See id.* When analysis of the intrinsic evidence permits unambiguous definition of the meaning and scope of the claims, as it will in most cases, reference to extrinsic evidence is improper. *See id.* at 1583. The Federal Circuit has reaffirmed this principle in *Phillips v. AWH Corp*., 415 F.3d 1303, 1314 (Fed. Cir. 2005). Although courts can put general or specialized dictionaries and comparable

extrinsic sources to appropriate use in helping to ascertain the commonly understood meaning of words, they must give this evidence only the relatively limited weight it is due and not divorce claim terms from the context of the intrinsic evidence. *See id.* at 1318-19, 1322-24.

A court's examination of the intrinsic evidence in a claim construction analysis begins with the words of the disputed claim itself. *See Vitronics Corp.*, 90 F.3d at 1582. The claims define the scope of the right to exclude. *See Teleflex, Inc. v. Ficosa N. Am. Corp.*, 299 F.3d 1313, 1324 (Fed. Cir. 2002) (*quoting Renishaw PLC v. Marposs Societa' per Azioni*, 158 F.3d 1243, 1248 (Fed. Cir. 1998)). In the absence of a patentee's "express intent to impart a novel meaning to the claim terms," the words of the claims take on the "'ordinary and customary meanings attributed to them by those of ordinary skill in the art.'" *Mars, Inc. v. H.J. Heinz Co.*, 377 F.3d 1369, 1373 (Fed. Cir. 2004) (*quoting Int'l Rectifier Corp. v. IXYS Corp.*, 361 F.3d 1363, 1369 (Fed. Cir. 2004); *Brookhill-Wilk 1, LLC v. Intuitive Surgical, Inc.*, 334 F.3d 1294, 1298 (Fed. Cir. 2003)).

In assessing the meaning of the claim terms, a court must always review the specification. *See Vitronics Corp.*, 90 F.3d at 1582. The specification is the part of the patent that "teaches" the invention so that one skilled in the art can make and use it. *Amgen, Inc. v. Hoechst Marion Roussel, Inc.*, 314 F.3d 1313, 1334 (Fed. Cir. 2003). The specification is highly relevant to claim construction because it may contain special or novel definitions of claim terms when the patentee has chosen to be his own lexicographer, *see Vitronics*, 90 F.3d at 1582, or it may help to resolve ambiguity when the ordinary and customary meaning of a term is not sufficiently clear, *see Teleflex*, 299 F.3d at 1325. In sum, the specification is the "'single best guide to the meaning of a disputed term,'" *Phillips*, 415 F.3d at 1315 (*quoting Vitronics Corp.*,

3

90 F.3d at 1582), and is usually "dispositive," *Vitronics Corp.*, 90 F.3d 1582.

The final source of intrinsic evidence plays a role similar to the specification in the claim construction analysis. The prosecution history of the patent — the complete record of the proceedings before the Patent and Trademark Office — "provides evidence of how the PTO and the inventor understood the patent" and should be considered by the court. *Phillips*, 415 F.3d at 1317. "The patent applicant's consistent usage of a term in prosecuting the patent may enlighten the meaning of that term." *Metabolite Lab., Inc. v. Laboratory Corp. of Am. Holdings*, 370 F.3d 1354, 1360 (Fed. Cir. 2004). The prosecution history may contain "express representations made by the applicant regarding the scope of the claims." *Vitronics Corp.*, 90 F.3d at 1582. But any limitation found in the history must be "clear and unmistakable." *Anchor Wall Sys., Inc. v. Rockwood Retaining Walls, Inc.*, 340 F.3d 1298, 1307 (Fed. Cir. 2003).

If a claim is amenable to more than one construction, the claim should, when possible, be construed to preserve its validity. *See Karsten Mfg. Corp. v. Cleveland Golf Co.*, 242 F.3d 1376, 1384 (Fed. Cir. 2001); *ACS Hosp. Sys., Inc. v. Montefiore Hosp.*, 732 F.2d 1572, 1577 (Fed. Cir. 1984). However, the court is not permitted to redraft claims. *Quantum Corp. v. Rodime, PLC*, 65 F.3d 1577, 1584 (Fed. Cir. 1995).

### III. DISCUSSION

In their Joint Claim Construction and Prehearing Statement, the Parties indicate they have agreed to the following:

a. The preamble to claim 1 does not require construction and is not a limitation on the claim.

b. The proper construction of "coaxial" as used in claim 6 is: "that the inner and outer can have an identical common axis."

The Parties submitted a Joint Claim Construction Chart as Exhibit A to their Joint Claim Construction and Prehearing Statement. See Docket #24. The Parties disagree as to the meaning of five patent terms, as follows:

1. An outer can having a bore.

    Plaintiff's Proposed Construction: A body for attachment to a transmission, the body having an internal cavity.

    Defendants' Proposed Construction: A metal container on the outside of the claimed assembly that has a hole.

2. An inner can.

    Plaintiff's Proposed Construction: A body configured to fit within the bore of the outer can.

    Defendants' Proposed Construction: A metal container on the inside of the claimed assembly.

3. A vibration absorbing material positioned entirely within the bore of said outer can and around said inner can.

    Plaintiff's Proposed Construction: Any material capable of attenuating or absorbing vibrations or mechanical energy and located entirely within the outer can and external to an interior of the inner can.

    Defendants' Proposed Construction: A vibration absorbing material located wholly within and completely filling the bore of the outer can except for the volume taken up by the inner can and the stops.

4. Attached.

    Plaintiff's Proposed Construction: Fixedly secured.

    Defendants' Proposed Construction: Fastened or formed as a single piece.

5

   5.  Chemically bonded.

     Plaintiff's Proposed Construction: A physical connection between the vibration absorbing material and the outer can and the inner can.
     Defendants' Proposed Construction: A bond formed by a chemical reaction without application of adhesives.

**A. "An Outer Can Having a Bore" and "Inner Can"**

The Court has reviewed the respective positions of the Parties and finds that Defendant's construction of the terms "outer can having a bore" and "inner can" should be adopted. As noted by Defendants, (1) Mr. Burns' declaration to the U.S. Patent and Trademark Office refers to the outer can as "metal" (Docket #19-4, Exhibit D); (2) the ordinary meaning of the word can is "a usually cylindrical metal container" (Dictionary: Webster's 2005); (3) the claim language requires welding the inner and outer can to other components; and, (4) the specification describes the goal of having near "metal-to-metal" contact between the inner and outer cans in an attempt to overcome problems with welding in the prior art.

Accordingly, the proper construction for the phrase "outer can having a bore" is "a metal container on the outside of the claimed assembly that has a hole" and the proper construction for the phrase inner can is "a metal container on the inside of the claimed assembly."

**B. "A Vibration Absorbing Material Positioned Entirely Within the Bore of Said Outer Can and Around Said Inner Can."**

The Court has reviewed the respective positions of the Parties and finds that based upon the record, the term "a vibration absorbing material positioned entirely within the bore of said outer can and around said inner can" requires no construction. Further explanation is not necessary to aid the Court or the jury in understanding these terms as they are written.

6

The prosecution history of the '628 patent indicates that the word "entirely" was added to the specification to explain that the vibration absorbing material was located entirely within the outer can, not within the sleeve as in the prior art Buckingham '627 reference. (Docket #19, Exhibit D.) The construction proposed by Defendants goes beyond what is indicated in the record. There is nothing in the record to suggest that Plaintiff's invention required the outer can to be "completely" filled with the vibration-absorbing material. The term "entirely" refers to the location of the vibration-absorbing material, rather than the volume.

Plaintiff offers a proposed construction of the term slightly different from that included in the specification. However, the Court finds no basis upon which to deviate from the term as written. Accordingly, the term "a vibration absorbing material positioned entirely with said bore of said outer can and around said inner can" should be given its plain and ordinary meaning, without imposing any limitations or restrictions not specifically included in the claim language itself. Because further explanation is not necessary to aid the Court or the jury in understanding these terms as they are used in the claimed invention, any proposed construction shall not be adopted.

**C.     "Attached"**

The Court has reviewed the respective positions of the Parties and finds that based upon the record, the term "attached" requires no construction. Further explanation is not necessary to aid the Court or the jury in understanding the term as written.

The specification of the '628 patent reads as follows:

By using sleeve 18, objects of any shape or size may be later affixed to vibration-isolation assembly 10 in any method known in the art including, for example, press fitting, weldment, swaging, or through the use of adhesive or traditional fasteners.

7

('628 patent, col 3, ln. 20-24.)

> Also, while the sleeve 18 is shown as attached to outer wall 13 of outer can 12, it will be appreciated that these components may be formed as one piece, for example, by casting or extrusion. For sake of simplicity, the term 'attached' will be used in its traditional sense and to include formation of separate parts as a single piece.

('628 patent, col. 3, ln. 11-16).

The Court finds no basis upon which to deviate from the term as written. Plaintiff agrees that the '628 patent specification is unambiguous. (Docket #29 at p. 11.) Defendants' proposed use of the term "fastened" is overly narrow, given the language of the specification contemplates sleeve 18 being attached, or affixed, by means other than "fasteners."

Accordingly, the term "attached" should be given its plain and ordinary meaning, without imposing any limitations or restrictions not specifically included in the claim language itself. Because further explanation is not necessary to aid the Court or the jury in understanding these terms as they are used in the claimed invention, any proposed construction shall not be adopted.

**D.      Chemically Bonded.**

The Court has reviewed the respective positions of the Parties and finds that, based upon the record, the term "chemically bonded" requires no construction. Further explanation is not necessary to aid the Court or the jury in understanding the term as written.

The language of the '628 specification reads as follows:

The elastomer 16 may be chemically attached to outer can 12 and inner can 14 or secured by mechanical entrapment. [F]or example the end 30 of outer can 12 may be rolled over as depicted in FIG. 5 to entrap vibration-absorbing material 16. Advantageously, this eliminates the additional step of applying adhesives or chemically bonding the elastomeric material to outer can 12.

(Docket #19, Exhibit A, lines 28-35.)

8

> By adding sleeve 18, when attaching the shift lever, in contrast to the prior-art method of directly attaching the shift lever to outer can 12, it is possible to heat sink the outer can 12 protecting elastomeric vibration-absorbing material 16 and the bond formed between the material 16 and the outer can 12. [I]n some cases, this may eliminate the need for the use of adhesives to join vibration-absorbing material 16 to outer can 12.

(Docket #19, Exhibit A, lines 26-32.)

Plaintiff's discussion of the term "chemically bonded" is overly broad. Plaintiff points to the specification, arguing that pursuant to the express language of the '628 patent specification, there are many ways a "bond" can be achieved – a bond may be chemical, adhesive or both. That may be true. However, the Court has only been asked to interpret the term "chemically bonded" not simply "bonded."

Defendant's proposed construction – "a bond formed by a chemical reaction without application of adhesives" is overly restrictive. The '628 patent specification does not indicate that chemical bonds and adhesives are exclusive of one another.

The Court finds no basis upon which to deviate from the term as written. Accordingly, the term "chemically bonded" should be given its plain and ordinary meaning, without imposing any limitations or restrictions not specifically included in the claim language itself. Because further explanation is not necessary to aid the Court or the jury in understanding these terms as they are used in the claimed invention, any proposed construction shall not be adopted.

## IV. CONCLUSION

For the reasons set forth above, the Court makes the following findings:

- The proper construction for the phrase "outer can having a bore" is "a metal container on the outside of the claimed assembly that has a hole" and the proper construction for the phrase "inner can" is "a metal container on the inside of the claimed assembly."

9

The Court finds that the remaining terms should be construed according to their ordinary and customary meaning without imposing any limitations or restrictions not specifically included in the claim language itself. Further explanation is not necessary to aid the Court or the jury in understanding these terms as they are used in the claimed inventions.

IT IS SO ORDERED.

                                                  s/Donald C. Nugent
                                                  DONALD C. NUGENT
                                                  United States District Judge

DATED:  March 30, 2012